UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Kimberly G., )
 )
    *Plaintiff*, )
 )
v. ) No. 17 CV 50339
 ) Magistrate Judge Lisa A. Jensen
Andrew Marshall Saul, )
Commissioner of Social Security, )
 )
    *Defendant*. )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff is seeking Social Security disability benefits.[1] She filed her application on November 10, 2014, when she was 53 years old. Her medical problems fall into two categories. She has vision limitations caused by treatments for pituitary tumors. The second problem area is numbness and tingling in her hands and arms, which she claims makes it difficult to do some manipulative tasks. These symptoms are caused by several underlying impairments, including carpal tunnel syndrome, cubital tunnel syndrome in her right elbow, trigger thumb on the right hand, and a partial tear in a tendon and mild degenerative disc disease in her left shoulder.

Starting in the fall of 2014, which was around the time she filed her application, she underwent several procedures to treat these problems. These were as follows:

- October 2014—right carpal tunnel release

- January 2015—left carpal tunnel release

- April 2015—an injection of her trigger thumb

- July 2015—right elbow nerve decompression

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

1

These procedures were performed by Dr. Brian J. Foster, an orthopedic surgeon. After each procedure, Dr. Foster eventually concluded that plaintiff could return to work. Specifically, on December 30, 2014, two months after the right carpal tunnel surgery, Dr. Foster released plaintiff to work "[f]ull duty, no restrictions." R. 532. In March 2015, two months after the left carpal tunnel surgery, Dr. Foster again released her to work "[f]ull duty, no restrictions." R. 712. Finally, in October 2015, several months after the trigger thumb and ulnar procedures, Dr. Foster released plaintiff to work with, again, "[n]o restrictions."[2] R. 854.

The administrative law judge ("ALJ") held a hearing in August 2016. Dr. Ashok Jilhewar testified as the impartial medical expert. He opined that plaintiff had the residual functional capacity ("RFC") to do light work subject to certain restrictions, the relevant one for this appeal being that plaintiff could only do frequent handling, fingering, and reaching with her right hand and arm.[3] Dr. Jilhewar imposed no restrictions on the left hand and arm. Dr. Jilhewar relied, in part, on the fact that Dr. Foster did not impose any work restrictions.

On December 12, 2016, the ALJ found that plaintiff was not disabled. The ALJ adopted Dr. Jilhewar's analysis and RFC proposal, with one exception. The ALJ extended the handling limitations to the left arm in addition to the right arm. The ALJ also relied in part on Dr. Foster's statements that plaintiff had no work restrictions, but here again the ALJ did not adopt that opinion in full given the inclusion of the bilateral handling restriction. In short, the ALJ adopted a more restrictive RFC than suggested by either Dr. Jilhewar or Dr. Foster.[4]

---

[2] The Court notes that some of these statements attributed to Dr. Foster were written by his physician's assistant, Valerie Dautermann, who was working under his direction. *See* R. 854. Plaintiff has raised no arguments suggesting that this fact changes the analysis here. Therefore, for convenience, the Court will simply refer to these as Dr. Foster's statements, acknowledging that Ms. Dautermann was also involved.

[3] The Court will refer to these three activities (handling, fingering, and reaching) collectively as the "handling limitations."

[4] There was also a third layer of medical opinions. Two State agency physicians opined that plaintiff could do light work, and these doctors did not include any handling limitations. The ALJ gave these decisions only partial weight.

**DISCUSSION**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

Plaintiff raises two main arguments for a remand. The main one is that the ALJ erred in finding that plaintiff could do frequent handling (*i.e.* between one-third and two-thirds of the day) whereas plaintiff believes she can only do these activities occasionally (*i.e.* up to one-third of the day). If the ALJ had made the latter finding, then plaintiff would have been found disabled

---

Although these opinions arguably add additional weight to the ALJ's decision, the Court will not discuss them as the parties do not focus on them.

3

under the grid rules. The heart of the first argument is the claim that the ALJ erred in relying on the two medical opinions.

Plaintiff's second argument is that the ALJ erred in not finding that plaintiff's vision problems in her right eye would have prevented her from doing her past jobs as a deli slicer, school bus driver, or driving instructor. This argument can be addressed quickly. After plaintiff raised this argument in her opening brief, the Government responded that any error was harmless because plaintiff worked *six* past jobs, not just the *three* plaintiff mentions. The other three jobs not mentioned by plaintiff are cashier, retail sales clerk, and dispatcher. Relying on the Dictionary of Occupational Titles, the Government argues that none of these jobs would require plaintiff to do tasks implicating her particular vision limitations. The Court agrees with this argument. Moreover, in her reply, plaintiff states that she "does not challenge the Commissioner's" argument on this issue. *See* Dkt. #19 at 1, n.1.

Turning back to the first argument, the Court notes at the outset that plaintiff must traverse an arduous path to a remand given the landscape of medical opinions. Specifically, she must argue that two doctors—one who was her primary treating physician—were wrong in opining that she could work. Stated differently, it is not enough to simply cast doubt on only one of these opinions; plaintiff must prove that both were unworthy of being relied on. And she must accomplish this difficult task without having *any* medical opinion on her side.

In her opening brief, plaintiff mostly directs her arguments at Dr. Jilhewar's testimony, and only obliquely addresses Dr. Foster's statements.[5] The Court will discuss the two doctors separately, starting with Dr. Jilhewar. It is clear that plaintiff does not think highly of Dr. Jilhewar's testimony. She describes it, variously, as being "faulty," "confusing," "insufficient,"

---

[5] In fact, the opening brief never mentions Dr. Foster by name. It was only after reading the Government's response brief that it first became apparent that there were several on-point opinions from plaintiff's treating physician.

4

and "unreliable." Dkt. #13 at 3, 6, 8, 9. But once these conclusory labels are stripped away, plaintiff's opening brief contains only a few arguably substantive arguments.

One argument, perhaps the primary one, is built almost entirely from a snippet of testimony. At the hearing, the ALJ first questioned Dr. Jilhewar, who discussed the objective evidence in detail and set forth his proposed RFC. Plaintiff's counsel was then allowed to cross-examine the doctor. At one point during this questioning, the following exchange ensued:

> Q But then I guess if [plaintiff has] got issues with the thumb and she's trying to handle, *could that possibl[y] put her at occasional* [handling] given all the factors with the thumb and then the issues with the fourth and fifth fingers?
>
> A In my opinion, it's frequent until the orthopedic surgeon states otherwise.
>
> Q Okay.
>
> A I mean, *anything is possible. I'm not saying it's not possible*.
>
> Q Okay. But you—
>
> A *But* I'm going with the treating, the treating source perspective.

R. 68 (emphases added).

According to plaintiff, this exchange shows that Dr. Jilhewar was confused and had doubts about the testimony he had given moments earlier. The Court finds this argument to be speculative and undeveloped. To recap, plaintiff's counsel was the one who introduced the "was it possible" language into the discussion. Dr. Jilhewar's first answer was basically a "no," as he reaffirmed his opinion that plaintiff could do frequent handling. Then, as almost an afterthought, he added that "anything is possible." However, he then quickly closed any door opened up by this mild concession by stating that he still agreed with Dr. Foster's opinion. It is too much of a leap to conclude from this one brief exchange, which at best was ambiguous, that Dr. Jilhewar was confused and further that this confusion was so substantial to call into question all his earlier

detailed testimony. If counsel believed that Dr. Jilhewar was essentially recanting his testimony, counsel should have followed up with additional questions to bring out this conclusion more clearly. But there was no follow up after the above exchange. Plaintiff argues here that this testimony was so anomalous that the ALJ was required in the written decision to specifically comment on it and "interpret" it. Dkt. #13 at 8. But for all the reasons stated above, this Court is not persuaded because it agrees with the Government's assessment that Dr. Jilhewar's testimony was not "equivocal." Dkt. #18 at 9. Given this fact, the ALJ was not required to specifically discuss this issue. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (the ALJ does not have to discuss every piece of evidence in the written opinion).

Aside from the above argument, plaintiff only raises a few additional, largely undeveloped, points attacking Dr. Jilhewar's testimony. The strongest point relates to the left shoulder. Plaintiff argues that Dr. Jilhewar erred when he stated that plaintiff's left shoulder problem was caused by a cyst. Plaintiff argues that it was not "just a cyst" because she also had a partial thickness tear in the tendon, a lipoma, tendinosis, and mild degeneration in the joint. This is the only portion in her opening brief where she makes a claim that either of the doctors made a factual error in reaching their conclusions. However, the Court agrees with the Government that this one (possible) error was harmless given that no other doctor opined that plaintiff should have more RFC limitations than the ones adopted by the ALJ. Moreover, even though Dr. Jilhewar did not mention all the additional problems with the left shoulder, he did state generally that plaintiff had not gotten any treatment for the left shoulder. This argument would still apply regardless of what the specific impairments were. The Court acknowledges that plaintiff argues that she did not seek treatment for her shoulder because she "was obviously focused on a wide array" of other medical problems. Dkt. #13 at 11. Specifically, at the hearing plaintiff was asked whether

6

she had, or was going to have, any surgery for the tear in her left shoulder, and she testified that this problem occurred "in the midst of" her treatment for thyroid cancer and that she was "waiting to see what's going to happen with that." R. 48. She stated that she "possibly" could have another thyroid surgery, apparently meaning if the cancer returned or was perhaps found to be in the portions of the thyroid not removed by the earlier surgery, although this point is not clear. *Id.*; *see also* R. 55. It is true that ALJs should consider possible reasons that a claimant did not pursue treatment. *See* SSR 16-3p. However, the Court finds that the ALJ's failure to specifically discuss the issue of plaintiff's thyroid treatment, as it related to her shoulder treatment, is harmless. In her decision, the ALJ relied on Dr. Jilhewar's testimony that plaintiff had the thyroid tumor removed "without complications" and that her doctors "did not recommend any further treatment and noted her condition [was] stable." R. 18. Plaintiff has not challenged that finding here. Moreover, throughout this same general period, plaintiff sought and received numerous treatments for her hand problems, showing that she was able to pursue multiple treatments at the same time. Given all these facts, the Court cannot find that Dr. Jilhewar or the ALJ were unreasonable in relying on, as one factor in a broader analysis, the lower priority plaintiff herself admits she gave to her alleged shoulder problems. It should also be remembered that the ALJ did include an RFC limitation for frequent handling to account for some of the shoulder and other problems. The ALJ, therefore, did not ignore this allegation altogether. Finally, the Court notes that the ALJ at the hearing asked plaintiff an open-ended question about why she could not work, and she answered by describing problems with the right arm, fingers, and elbow. R. 46. She did not mention the left shoulder problem in this initial answer. *See* R. 46-47.[6]

---

[6] Later plaintiff's counsel asked specifically about the left shoulder problem, and then plaintiff discussed those issues. *See, e.g.* R. 55.

7

In her reply brief, plaintiff came forward with several new arguments. She asserted that Dr. Jilhewar "did not have operative notes regarding the plaintiff's right cubital tunnel release;" that he did not "mention any findings" about plaintiff's right trigger thumb release; and that he was not able to review Exhibit 29F, which consisted of Dr. Foster's treatment notes from May to October 2015.[7] Dkt. #19 at 2. In short, plaintiff argues Dr. Jilhewar's testimony was not based on a "full review" of the evidence. *Id.* These arguments fail because they were only raised for the first time in the reply brief. *See, e.g., Frazee v. Berryhill*, 733 Fed. Appx. 831, 834 (7th Cir. 2018) ("[The claimant] sought to add more arguments in her district-court reply brief, but that was too late to avoid waiver."); *Brown v. Colvin*, 661 Fed. Appx. 894, 895 (7th Cir. 2016) (arguments raised for the first time in a reply brief are waived). Moreover, it is not clear that this new evidence provides strong support for plaintiff's arguments. For example, Exhibit 29F contains notes from plaintiff's visit with Dr. Foster on October 15, 2015. This was apparently the last visit plaintiff had with Dr. Foster. In his notes, Dr. Foster wrote that plaintiff was "doing better in comparison to [her] last visit" and that her pain was then zero out of 10 "at rest" and was also zero out of 10 "with activity." R. 853. Dr. Foster then reiterated his earlier opinion that plaintiff could work with "no restrictions." R. 854. Plaintiff has not explained why this evidence would have changed Dr. Jilhewar's mind.

The Court now considers Dr. Foster's statements. Plaintiff's arguments here are more muted and less clear. The Court discerns two main arguments. First, plaintiff asserts that, even after the various procedures performed by Dr. Foster, she continued to report ongoing hand problems. As one example, plaintiff notes that she told Dr. Foster at the December 30, 2014 visit that she had "numbness and tingling in the ring and small finger" and "still [could not] open a

---

[7] The reason he did not review this exhibit is that it was not submitted until after the hearing. It is not clear whose fault it was that the exhibit was not submitted in time for Dr. Jilhewar to review and comment on it.

8

new jar of jelly." R. 531. Plaintiff is thus arguing that her subjective pain reports trump the doctor's opinions. The Court is not persuaded.

As a preliminary point, this argument relies on some degree of cherrypicking. Although it is true that plaintiff reported *some* continuing issues after this procedure, her symptoms indisputably improved. In these same notes, Dr. Foster noted that plaintiff had "5/5" strength in both hands; that her "pre-operative symptoms have improved after surgery;" and that she could work with no restrictions. R. 531-32. Plaintiff's argument rests on an all-or-nothing view that she could not work unless all of her symptoms were "completely" resolved, effectively requiring the complete elimination of every possible symptom, no matter how mild. Dkt. #13 at 7. But there is an obvious missing middle ground in which a doctor could conclude that some minor continuing symptoms were not incompatible with the ability to work.

It is also important to remember that the doctor to whom plaintiff reported her ongoing symptoms was Dr. Foster. He was thus well aware of plaintiff's subjective symptom reports when he made his statements that she could return to work. At its core, plaintiff's argument boils down to a simple disagreement with Dr. Foster's opinion. Plaintiff has not argued that Dr. Foster made any factual error or failed to consider relevant evidence. As noted above, plaintiff has not submitted any contrary medical opinion. Given these facts, neither the ALJ nor this Court has a valid ground for second-guessing the doctor's opinion.

Plaintiff's second argument is a series of speculations about reasons why Dr. Foster's statements might not mean what they appear to mean. Rather than summarizing these arguments, it will be easier to quote from plaintiff's brief:

> *It is not clear why* no restrictions were assessed [by Dr. Foster], especially given that prior to surgery plaintiff was told that full improvement *might* not occur. TR. 420. However, *arguably* she did not require any work restrictions because her activity status was listed as "not working." Furthermore, *it is possible that*

9

restrictions were *not necessarily* an assessment of plaintiff's work capacity from residual limitations that could not be surgically addressed, but rather mean to convey that she had completely healed and warranted [no?] post-operative recovery restrictions.

Dkt. #13 at 7 (emphases added). The Court has italicized certain phrases (*e.g.* "it is not clear why") because they are clues that plaintiff is speculating. To be sure, it is "possible"—in the same way that many things in the world could be described as theoretically possible—that Dr. Foster meant to limit his opinion in certain ways. However, there is no textual anchor or other contextual evidence to support these theories. Without such a foothold, the ALJ and this Court are left with only the "plain language," and this language certainly could be reasonably read in the straightforward way the ALJ read it. *See Gloria S. v. Berryhill*, 2019 WL 2435858, * 4 (N.D. Ill. June 11, 2019) (rejecting similar arguments).

Moreover, as the Government further persuasively argues, to the extent that Dr. Foster's statements were ambiguous, plaintiff's counsel could have sought clarification from him. The Government argues: "[Plaintiff] is represented in this court by the same attorney who represented her before the ALJ. If her doctors had intended to opine further limitations or if there was any lack of clarity, [plaintiff] could have introduced clarifying, revised medical opinions either before the ALJ or, on review, to the Appeals Counsel. She did not." Dkt. #18 at 8 (internal citation omitted). In her reply brief, plaintiff does not dispute the Government's assertion that she could have gotten a clarifying statement from Dr. Foster.

Plaintiff also argues that the ALJ played doctor by extending the RFC handling limitation to the left arm. This is true, but plaintiff overlooks the fact that this was a *more restrictive* RFC limitation, one which helped plaintiff's case. So, to the extent that the ALJ was playing doctor, then she was doing so for plaintiff's benefit. The logical import of plaintiff's argument is that the ALJ should have gone further and played doctor *even more* by adding the more restrictive

10

limitation that plaintiff could do handling activities only occasionally. But there was no medical opinion to support this argument. *See, e.g., Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

In sum, the Court is not persuaded by plaintiff's argument that the ALJ was compelled to reject the opinions from two medical experts. This was the dominant argument in the briefs, but plaintiff made a few other short arguments. One was that the ALJ did not fairly consider plaintiff's daily activities. The ALJ noted that plaintiff was able to do chores such as vacuuming, cooking, grocery shopping, driving, and that she also was a Village trustee. Plaintiff argues that the ALJ failed to consider that plaintiff "was not able to cook lunch or dinner," that her husband helped with the grocery shopping, and that she did computer work in "short bursts." Dkt. #13 at 11. The Court finds that these additional qualifications are not significant enough to warrant a remand. Plaintiff has not shown that the ALJ ignored any line of evidence. These are closer to minor differences in how the evidence was described. Moreover, one could criticize plaintiff's descriptions as being slanted in the opposite direction. For example, plaintiff claims in her brief that she was not "able" to cook lunch or dinner. *Id.* However, in reviewing the page of the transcript cited by plaintiff, the Court notes that she merely testified that it was not her regular practice to cook lunch and dinner, but this was only because her husband and son worked the second shift and were not around. R. 50. Relatedly, the ALJ also noted that plaintiff was able to chop and peel vegetables, a fact plaintiff leaves out of her own descriptions. Dkt. # 18 at 4.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied; the government's motion is granted; and the decision of the ALJ is affirmed.


Date:  August 27, 2019                    By:  _____
                                               Lisa A. Jensen
                                               United States Magistrate Judge